Good morning, Your Honors. My name is Peter Sessions. I'm counsel for the plaintiff and the appellant, Andre Lesgras. I'd like to reserve two minutes, if I could, for rebuttal. This is a case, an ERISA case, about what rule the court should apply in determining whether an ERISA benefit appeal is timely. So the issue before the court is purely a legal one. The court need not defer to the district court, and the court need not defer to the plaintiff administrator in determining what that rule should be. Now, here's the case we have a benefit plan that says that claimants have 180 days to submit an appeal. But the plan does not say how to compute those days. ERISA's statutory scheme does not say how to compute those days, and the regulations that are promulgated by the Department of Labor to enforce that scheme don't say how to compute that time period. As a result, it's the contract between your client and Aetna, or a contract between your client and, oh, I'm sorry, Federal Express? Well, that's a good question. It seems to be a contract. It seems to be, in fact, a contract for the provision of benefits under a long-term disability plan. So if it is a contract, I wanted to ask you if it were a contract, I'm wondering why it is that in this particular situation with a contract, one would turn to the federal rule of civil procedure. It seems to me if this is a contract between your client and either Aetna or, if you will, Federal Express, one would look at the contract and one would determine whether the contract was ambiguous or not. Well, ERISA benefit plans are in many ways like contracts. However, and this is certainly the argument that defendants made in their briefs. Well, it isn't an argument I necessarily thought they were making. I was saying to myself, you know, I think this guy needs to tell me why this is an argument. It seems to me that it says you've got 180 days. It doesn't say anything about 182 days. It doesn't say anything about anything else. It says 180 days. And it doesn't say anything about just because it's Saturday, it means it's different than 180 days. It says 180 days. That's the contract. So I'm saying to myself, how is that ambiguous? Well, the reason we believe it's ambiguous is because the plan doesn't set forth a method for computing that 180 days. Well, but just a minute, it seems pretty simple. It doesn't seem to me that I've got to be a Phi Beta Kappa to come up with 180 days from receipt. I mean, I just take the day it was received, and I understand that it was received on April 18. And then I say, okay, take 180 days. That's October 15. Well, deadlines are sufficiently ambiguous under federal law and under federal rules. What do you mean they're ambiguous under federal law? We don't have federal law here. We have a contract. Well, and that's why I was trying to argue earlier that a RISA plan. Are you saying that this is not a contract? In many ways, as I was saying, in many ways, RISA plans are like contracts. However, they are also. I didn't ask you what they are in many ways. Is it a contract or isn't it? It's a type of contract that's heavily regulated by federal law. Well, I understand that. So if, in fact, it's heavily regulated, I can go to, as I understand it, then the regulation. Frankly, I don't know that I even have to get to the regulation. If I look at 29 U.S.C. 1133, it says the claimant must be allowed a reasonable opportunity for a full and fair review. That's correct. Are you claiming a violation of that statute? In this case, yes. Where did I see that? Well, the idea of. The idea behind 29 U.S.C. 1133, as you mentioned, is that we want to give plan beneficiaries a full and fair review. So then the question is, well, what constitutes a full and fair review? Well, I guess my worry is that I'm trying to find in your brief what it is I'm supposed to look at. If I think that you're claiming a violation of the statute, I think you've waived it because I didn't see that anyplace. If you're saying it's an ambiguous contract, then I'm trying to determine, do I determine that under federal law? ERISA law? Is there a common ERISA law that would apply? Or is it California law? In my book, I'm worried that it's California law. Well, I don't believe it's California law because ERISA has an extremely broad preemption provision. Well, I understand it has an extremely broad preemption provision, but I don't know that that preemption provision says that interpreting the terms of the contract is preempted. It just says we can't have any ERISA plans under California law. But, again, that's why I really want you to help me. I'm not trying to be mean or terrible here. I'm just saying I got a contract. I know when a contract is ambiguous or not. I looked under California law. I don't think it's ambiguous under California law. I looked under ERISA law or general common law. I didn't find any ambiguity under that. So I'm trying to figure out why it's ambiguous. I understand. And I think what Your Honor is saying is what framework should I be looking at this provision through? And I think the framework that the Court should be looking at it through is this is an ERISA benefit plan. So what is the purpose of ERISA? In order to determine how to interpret this plan, which is a type of contract, we need to look at it in a way that furthers the purpose of the statute. And the purpose of the statute is to protect plan beneficiaries. Well, the statute we're really talking about, if you're going to go under statute, it's 29 U.S.C. 1133. 29 U.S.C. 1133 says the claimant must be allowed a reasonable opportunity for a full and fair review. Well, 180 days, which is what you were given, 180 days seems more than a full and fair review. Where does 180 days come from? It's in the Department of Labor regulations. And what the regulation says is the regulation is promulgated in furtherance of 29 U.S.C. 1133. Now, usually when a critical date falls on the Sabbath, we don't count it. That's correct. We've got the Sabbath, and we've got the second Sabbath. That's correct. That's the general rule. And so it's confusing how you start to count. You count the first day, you count the last day. That's correct. And that's our argument, Your Honor, which is how do you count it. And the Federal rules provide a method for counting, and all we're arguing is that that rule that's in Rule 6 should be applied in the ERISA complex. Let me just clarify a couple of things. Let me just ask them a question. Go ahead. Who drafted this ERISA plan? Federal Express did, I believe. I said, who drafted it? Federal Express, he said. Oh, draft, you know. The writer. He said Federal Express. It's the Federal Express benefit plan. So I assume attorneys at Federal Express. Yeah. Some lawyer at FedExpress drafted this, yeah. Yes. Lawyer from Federal Express drafted it. So let me just ask you. So what exactly was the plan language about the 180 days? That's a good question, Your Honor. The plan was not attached to the complaint. And this is up here on a motion for judgment on the pleadings. So we're only going by what's alleged in the complaint, as I understand it. That's correct. Well, now, we could have looked, the district court and we, I guess we still could, could look to the exact language of the plan, because we can look at anything that's alleged in the complaint. That's correct. What is the exact language? I mean, I gather it's quoted in the complaint, but what is it? It's that the claimant has 180 days from receipt of the denial decision. To do what? To appeal. To do what? To do, to send it in? So it's, there's various terms used in the judge's order of file to file, to send. That is one of the difficulties, Your Honor. To them receding it within 180 days. The plan is not in the record, unfortunately. It is based on the allegations in the complaint. I believe counsel and I have an agreement about what the plan says. But the exact language. So we ask, so are we looking to determine when, that he has, within 180 days, the plaintiff needed to send in his appeal? Right. Submit the appeal. And this Court in a previous instance. So what does send in mean? Drop it in the mailbox? Well, that's what I was about to say. In the Shikori case, which is a case from this Court, the Court ruled that the mailbox rule applies. Now, where did that come from? That's the mailbox rule? Yeah. It's created by the Court as a federal common law rule. But as I understand it, in this particular case, it wasn't even dropped in the mailbox until October 17th. It was dropped in the mailbox on that Monday, which I believe, I believe you're correct, it was the 17th. October 17th. So even with the mailbox rule, we wouldn't hit October 15th. That's true, but that's only important if October 15th is determined to be the relevant date. Let me ask you this. I have one other question. So Rule 6 actually says the following rules apply in computing any time period specified in these rules in any local rule or court order or in any statute that does not specify a method of computing time. Why wouldn't that apply to this situation? Well, we think it should apply in this situation because the 180-day deadline is lifted from the Department of Labor regulations, which are created pursuant to the statute. So our argument really is twofold. It's first of all, Rule 6 should apply directly. But even if it doesn't apply directly, like Shikori with the mailbox rule, it's a rule that the Court should adopt as a general rule in determining whether appeals are timely. Let me go one further because I appreciate my colleagues' questions. It seems to me that all I have to deal with here is the claimant must send the appeal to the plan administrator within 180 days of receipt. So what we're really talking about is someone having dropped it in the mailbox within the 180 days. We're not talking about anything else based on what you alleged in your complaint. So if, in fact, one had dropped it in the mailbox on October 15, it would comply. What you're suggesting is that we ought to interpret that means they don't have to drop it in within 180 days, but they have to drop it in within that 180 days if it doesn't fall on a Saturday. Is that what you're arguing? I believe so, Your Honor. Okay. So as my good colleague said, the rule that you have suggests that it applies to statutes. It doesn't say anything about regulations, does it? It does not use the word regulation. So should I then, I mean, in normal, if I'm trying to determine whether regulations should be subject to all of this stuff, of my law, I would say maybe I ought to have those who draft the regulations suggest it. Maybe they ought to see if the regulation is ambiguous before I do. Is that something I ought to think about here? Well, I think the Court is in an ‑‑ it would be nice, yes, if the people who had drafted the regulations had specified a method for computing time. And the Court is in an unfortunate position because it doesn't have the specific guidance. Isn't the response to Judge Smith's question that a regulation is the equivalent of a statute? It sets forth a rule that's binding on those that are affected by it. Well, it was clearly meant to ‑‑ Just like a statute. It was clearly meant to flesh out the statute. Because the statute says participants are entitled to a full ‑‑ Well, we treat regulations, law, we treat a regulation that establishes a rule tantamount to a law, a rule. That's correct. Well, we really can't say that, can we? Because Congress didn't pass it. It was passed by a regulatory group. And that regulatory group's regulations are okay until somebody challenges them. And then at that point, they might be declared not law at all. Well, they have the effect of law. And I would argue that because the statute is vague as to what constitutes full and fair review, clearly the intent was to leave it to the Department of Labor to flesh that out, to determine what is a full and fair review. Do you believe that a careful person would send an appeal two days late just because it was a Saturday? I believe that we all would have been better off. Or is this just a good lawyer's argument? I mean, if in fact a careful person had a document that was sent to them, and it says put it in the mail 180 days from the day you got it, who would wait until Monday to do it? Or is this just a good lawyer's argument to get out of what really is the problem here? Somebody didn't do what they should have done. Well, I certainly hope it's a good lawyer's argument. But, yes, clearly we all would have been better off if the appeal had been submitted before it was. Well, lawyers wait until the last minute to do everything. And also I think there's a genuine question about — Which is ridiculous. I think there's a genuine question about, and I think there are people out there, planned participants and beneficiaries, who are confused about when their documents are due. And I think adopting a rule, which has been used for decades in the federal courts and is easy to apply and is consistent with the statute, that tells participants you have until Monday if your deadline falls on a weekend is sensible. I'm seeing — So you think it's close enough for government work, huh? That's one way to put it. I'm well over my time, I see. So if the Court doesn't have further questions, I'll sit down. Well, the clock's a little ambiguous. It all depends on how you compute the clock. Thank you, Your Honor. All right. Good morning. My name's David Knox. I'm here on behalf of appellees in this case at No Life Insurance and the Federal Express Corporation Long-Term Disability Benefits Plan. I believe the Court has properly recognized that this case really only presents one question. It can really be boiled down to one question. Does the phrase within 180 days mean within 180 days, or does it mean something more? If I may clarify just a couple of points. The question was raised earlier, where does the 180-day deadline, what's its source? Its source in this case is the Federal Express Long-Term Disability Benefits Plan. You had to meet the standards set forth in the ERISA regulation. In order to qualify for — So you had to at least give 180 days. We did. But the term itself is drawn from the plan. That term could have been anything that — More than 180 days. It could have been more. It couldn't have been less than 180 days. It could have been less, but it would not have qualified as an ERISA plan. That's correct. By regulation, you would not have then provided a reasonable opportunity to appeal. Exactly. So you had to give 180 days as mandated by the Federal regulation. Exactly, Your Honor. But that, again, really boils down to the other basic element here, as Your Honor was mentioning. What this is, what an ERISA benefits plan is, all of them, at their very fundamental level, is simply a contract. But where did the money come from? I'm sorry? Where did the money come from that went into the plan? Federal Express Corporation funds the plan. A hundred percent. One hundred percent. And the life insurance company is a third-party claims payment administrator. They have no funding issues. They handle only decisions related to eligibility for benefits under the plan. But they do not fund the plan. And Federal Express makes no decisions related to eligibility. That has been delegated to Aetna. So there is no conflict of interest that we're dealing with in this particular case. The plan's requirement that a claimant must submit. Yes, Your Honor. The papers that this worker got, were there examples in there about how you compute the 180 days, where you start, how you finish? I think most people, maybe we've been programmed, that you don't count weekends when the date falls on a weekend. Well, Your Honor, I don't know that I would necessarily agree with that. I think we You don't have to. That's my view. I certainly understand. And I think we, as attorneys, are programmed that way. We're very familiar with the Federal Rules of Civil Procedure. We understand that, well, even a few years back, if I had something that was due within a 10-day period, I knew it wasn't really 10 days. Because I don't have to count the weekends. And if it's a holiday, and if it falls on a certain day of the week, it may be 13 days. I'm well accustomed with that. The general public, however, contrary to what, or in contradiction to what Mr. Sessions was arguing earlier, I don't think the general public thinks that way. A fine example that I think I have here is my Tennessee driver's license. I was looking at it earlier. It expires on January the 14th, 2017. And I looked that up. It gives you a date. It expires on that date. And I looked it up, and the Court can take judicial notice of the fact that that day is a Saturday. And the following Monday is the day we celebrate Martin Luther King, Jr.'s birthday. So it's a Federal holiday. Now, I'm under no illusions at all that I can wait until that day. It all depends on who the traffic court judge is. And I was a traffic court judge once. And I wouldn't, you know. If a police officer gave you a ticket on the 10th and took your car away, I'd rule in your favor. In your equitable. My equitable. You may, and I would certainly be very appreciative if you may grant me leniency on that. But I don't think there would be any question that my license had expired. I don't think that you would sit there and say that my license had not expired. I actually had three more days to get it expired. Did the letter give Mr. Legrasse a date certain within which the appeal had to be filed? The letter does not give a date certain. Your appeal is due at wherever it was due by such and such a day? It does not give a date certain because the date is triggered by the date that he receives the letter. So what was he supposed to do then? What actually was he supposed to do under the letter you sent him? He was supposed to take the date that he received the letter, as Your Honor had mentioned earlier, count out 180 days. That's the deadline. Let's say 180 days. Here it falls on a Saturday. Falls on a Saturday. Okay. And was he supposed to take it down to Federal Express and give it to him? No, Your Honor. The plan language, which we mentioned earlier, the actual end, granted, if this case were remanded back down, the additional documentation would be submitted and, frankly, I think we'd be back here on a motion for summary judgment with the same issue. But the actual plan language says that the appeal has to be sent to the administrator. And while I don't have the copy here, the communication that he actually received tells him, gives him two addresses that he can mail it to and a fax number that he can send it to. So all he has to do within that six-month period is write down on a piece of paper, I appeal, sign it, put it in an envelope and mail it to one of those addresses or fax it over to that address, and he's completely complied. And as Your Honor mentioned earlier, if he had taken the steps that he had taken on Monday, done the exact same thing on Saturday, put that in an envelope and dropped it in the mail or any of the other 179 days. How is it determined that he drops it? You know, if he drops it in the mail, let's say on a Sunday, does the post office always do they process and stamp everything on Sunday? They do not, but he would at least –  He would – How would we know? Well, I'd say that he would at least have the certification and under the mailbox rule, it creates a rebuttable presumption that he's done it. The burden would then shift. If this were going to be the basis for denial, the burden would then shift to Atenae and to FedEx to prove that he had not done it. What is UPS have in its retirement plan? UPS, I would not know. Now, Federal Express, I'm not sure – This is Federal Express. This is Federal Express. Oh, I know that. I just – Oh, you want to know UPS? Yeah. UPS, I'm not familiar with and have no idea, Your Honor. No idea. Now, is Federal Express – are they unionized there, the workers? The pilots are represented by the Airline Pilots Association, but beyond that, no, Your Honor. Oh, the pilots are? The pilots are. But I'm talking about the rest of the people. No, Your Honor. They're not? They're not. Okay. And this was all drafted by the lawyers for Federal Express? Yes, Your Honor. The plan was drafted by Federal Express. Now, in this – If I'm looking for a definition – What if you had somebody that, excuse me, that, you know, was a strict observer of the Sabbath? What would the answer be? Your Honor, again, the answer would be the same. In this particular case, you've got 180 – you've got a six-month time period to do it. Some burden has to fall on the individual to look at that, to calculate their deadline, and if for whatever reason, day 180, they can look ahead and say, well, that's going to be my Sabbath, or I'm going to be away on a paid vacation, or something is – that's my birthday. For whatever reason, there's something going on that would prevent them, in their mind, from doing that on day 180. They have another 179 days in which to comply. And again, it's not a burdensome requirement on the individual. All they have to do is write out on a piece of paper, I appeal, put it in the mail or fax it, and it's done. So the 180-day period, I really – Well, does the company – I guess they don't – send the employee a note of, you know, the date's coming up? No, Your Honor. No reminders go out. That is the responsibility of the individual that is wanting to appeal their claims. How do you account for the mailbox rule? I'm sorry? How do you account for the mailbox rule? In terms of the plan administration itself? Well, the courts adopted – applied the mailbox rule. Yes, Your Honor. There's nothing in the regulation. Correct. Nothing in the statute. Correct. ERISA itself is – Why isn't this similar to the mailbox rule situation? Well – They just go hand in hand. Actually, I don't believe that they do. And here's the reason why. ERISA plans, again, as I said earlier, they are at their heart contract law. So the first thing you have to do is before you can apply any modification – and I see I'm out of time. Is it okay if I continue to answer this? Of course. Thank you. Before there can be any modification or revision to the plan, the first has to be a decision that the phrase that's in question, here the 180-day rule, is somehow ambiguous. If that happens, the courts in ERISA cases apply federal common law to determine these issues. In this particular case, there's no need to adopt this – first off, there is no federal common law of a six-day – or, excuse me, of a grace period just because something falls on a weekend or a holiday. There's a policy that's embodied in a rule, but there's no case law that has established this. In fact, the only case that I have found that really directly addresses this is the Jones case, which I cited in my brief. Yeah, but, you know, it's the part of our country, huh? If they have to file your income tax and it falls on a Saturday, you get till Monday. Well – That's the way people think, you know. That's the way we've been brainwashed. I would – well, again, Your Honor, I understand your point on that. I would respectfully disagree with it. I do believe that it is much more commonplace nowadays for individuals to regularly do business and conduct business on weekends. And the fact that there is a deadline that falls on a Saturday or a Sunday doesn't really impact it. It doesn't impact normal contracts. It doesn't apply here in this case either. Back to the – just as your earlier question, the reason I don't think the mail – the reason I don't think this rule of extension would apply here is because it is unnecessary with the mailbox rule. The mailbox rule is well-adopted federal common law. So its application – Well, you know, it came about mainly in the prison – dealing with pro se prisoners. That's what drove the mailbox rule. Exactly, Your Honor. When you're in – you know, within the prison when you – the prisoner doesn't have access to the mailbox. Exactly. He has to give it to a guard and ask them to mail it on his behalf. Right. But the point being – I mean, that's a long way from being a common – a rule that's grounded in common law. I mean, it evolved with the unique circumstances, and we've applied it in other situations. And I apologize if I misspoke on that. I did not mean to infer that it derived from common law. What I meant to say on that is that it is well-ingrained federal common law now. It is existing federal common law. Whereas the rule that Mr. Sessions asked this Court to adopt is not one that is well-grounded in federal common law. It is one that he is asking this Court to adopt and impose here. The real issue that I have with it, however, as I mentioned in my brief, is that what happens by imposing this extension is that you end up with the situation where certain participants in a plan get a greater length of time to file their – Under one or two days at most. But, again – Why is that so awful? This is a benefit plan to benefit the workers. Right. Governed by a statute that Congress passed for the benefit of workers. Yes, Your Honor. And they wiped out all – you know, there's a strong preemption rule. All this was done for the benefit of workers and employers to regulate everything. Well, the – I don't see why, you know, if you adopted this way of calculating time, why that is so inconsistent and so undermines the overall purposes of the ERISA statute. Well, the purpose of the plan and the purpose of ERISA and what plan administrators are charged with doing is providing uniform – No, the purpose of ERISA, you know, a long time ago, is that it's a big pot, you know, for the employer. Even though the employee might contribute billions of dollars. But as long as it's what they say actuarially sound, then the company can go in and get all that money. Right? No, Your Honor. Once the funds are transferred into the trust, it is irrevocable and the company cannot go back in and receive that money. That money is put in – They can do that. They can do that. Once the – if the plan is actuarially sound, they can go and take it. Whatever is above that quote, actuarially sound figure, they can take that money out. Well – You know that? And speaking in terms of the plan that is – I know it because I said you can't do it. And the Supreme Court said, no, you know, they can do it. And that resulted in – that's why the airline pilots, who thought they were sitting on a big retirement plan, ended up with nothing. Well – You know – The terms of the plan – Added probably to the recessions we're having. Well – We're talking about hundreds of billions of dollars. Well, Your Honor, I can say that the terms of the plan – If I – if I – I was expecting a package from FedEx. They called me, said they had it. And then I asked that they send it to my house. And – because it was late. And they said there would be an extra charge for that. So I didn't want to pay that, so I went to the FedEx office and I got my package. Now, they were supposed to deliver it on that day. But they were off, you know. So who are you going to talk to? A machine on the end of a telephone? You know, push this button, push that button. Well, if there is an issue with the package delivery, I can certainly help you get directed to the right folks to address that. I just have one last question for you. Yes, Your Honor. Which is Rule 6 says that it has the language or in any statute that it does not specify a method of computing time. Yes, Your Honor. What does that mean? Again, well, with respect to this plan, I don't think it means anything, as I have mentioned in my brief. I don't think the rule applies here because while the term is the 180-day timeframe is mandated by the statute as the minimum amount, again, it is not required that the period be precisely 180 days. It can be anything that the plan wants it to be. As you mentioned earlier, it could certainly be greater. So any deadline not defined by statute, I agree, probably would apply to regulations. And I believe some of the case law that was cited in the briefs in this case dealt with district courts applying Rule 6 to determine deadlines under Federal regulations. In this particular case, however, we are not dealing with a regulatory deadline. We are dealing with a deadline in a private contract, an ERISA contract. And the term itself is unambiguous and is clear. So does the ERISA contract specify a method of how you compute the 180 days? The contract does not. And following Jones, you would just simply apply the ordinary meaning of the plain language and say 180 days means exactly that. Why not put that in the contract? Well, something like that could be included in the contract. Why not put it in? Well, it may very well. You gave them the absolute minimum. And we know that when a date falls on a weekend, you extend it to the following Monday. And why not put that in and why not make it clear? Well, Your Honor, first off, I don't believe that it is unclear. I believe the 180 days is very clear. The provision that you're speaking of certainly could be included in the plan. First day, you count the last day. How do you? The end result, Your Honor. It would be a nice thing to do, don't you think? Perhaps. But in terms of being efficient with contracts, to ---- What? In terms of being efficient with the contract, if parties were to begin to include every potential exception here, the exceptions would swallow the rule. What we're dealing with here is a phrase that says, within 180 days, and I think it's important to look at the facts in this case, Mr. Lagrasse didn't have any confusion about what 180 days meant. In fact, his entire argument is premised on the fact that he knew 180 days fell on October 15th, which happened to be a Saturday. So there is no confusion. That's even alleged in his complaint, correct? It is alleged in his complaint. His complaint also in paragraph 30 at ER 48, I believe, talks about how the language of the plan itself was clear that the appeal had to be sent within 180 days. The reason two days, I think, doesn't make a difference here is because we're only talking about applying a two-day extension if it happens to fall on a Sunday. Well, the individual who received his denial letter such that his deadline fell on a Wednesday doesn't get the benefit of that extra two days. So suddenly we're treating the individuals who happen to receive their letters in such a way ---- That happens all the time. I'm sorry? You know, just the way things happen. Well, again, again, I would ---- We try to account for it in a rational way and kind of make sense to if the event falls on a Saturday or Sunday or a holiday. I would agree. We send it to the next day. Well, I would ---- It doesn't seem to be so, you know, so difficult or so outrageous or so of such a nature that it undermines the whole scheme. If we were talking about a situation where there was a heavy burden on the individual ---- But I don't realize in this particular instance, it's only one or two days, why the plan administrators just didn't say, well, okay, we'll overlook it and we'll just go ahead and deal with it. In fact, there was some suggestion in here that he was given an additional amount of time within which to submit documents. He was ---- Medical reports. He requested an ---- Which ---- If this case is remanded back down and the record is further developed, there's evidence in the record that Mr. LaGrasse's attorney, not Mr. Sessions, he did not ---- he and his firm did not represent Mr. LaGrasse below, but that the attorney contacted Aetna about the appeal and requested additional time to submit additional documentation. And he was told very early on, you can submit the documentation if you want, and our plan says that we will allow you time to do that before we make a decision. But you need to understand, this is going to be denied because it was untimely. It was told very early on. Now, he wanted to go ahead and build this record, and that's fine. He's permitted to do that under the plan. And he was allowed to submit that documentation prior to the appellate group making the final decision. But it didn't impact the basis of the decision. It didn't change the fact that his appeal was still untimely. The plan administrators have the authority to say ---- I mean, could he have written in and said, look, I filed it two days ---- I mailed it in two days late. I don't like you to excuse that. He could have. He certainly could have requested that. Do the plan authorities have the ---- do the plan administrators have the authority to say, under the circumstances, you're right, you were sick or whatever, maybe there's a legitimate excuse. Do they have the authority to waive that? They would have the authority to waive that, and they probably ---- Because it's not ---- there's not ---- it's sort of discretionary to some extent. I would agree that it is discretionary. However, it would behoove the plan ---- But that didn't happen here. That didn't happen here. And, again, the individual ---- there's nothing to indicate in the record that we have. And I would represent, again, that if the record is further developed on remand, there's nothing in the record there to indicate that Mr. LaGrasse or his attorney below ever gave any indication as to why they couldn't meet the 180-day deadline. With that, Your Honor, I believe the case was properly decided by the district court below, and I would ask that the decision be affirmed. Thank you. I think we've thoroughly addressed all the issues in this case, so I'm happy to waive the rebuttal and answer any further questions if the Court has any. All right. Thank you. All right. Thank you. Thank you. Thank you.
judges: Pregerson, Paez, Smith